RUSH, Chief Justice,
dissenting.
My disagreement with the majority opinion rests entirely on stare decisis. Had I been on this Court in 2003, I may well have joined the Ott dissent, at least in its statutory analysis. We strictly construe statutes that limit a claimant’s right to bring suit, see, e.g., Schoettmer v. Wright, 992 N.E.2d 702, 706 (Ind.2013)— so that when several interpretations are reasonable, we adopt the narrowest. And not only was the Ott dissent’s narrow reading of Section 2 reasonable, it would also have mooted the constitutional questions, consistent with our preference to avoid deciding constitutional issues when other grounds would suffice. E.g., Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm’n, 695 N.E.2d 99, 106-07 (Ind.1998).
But we are not writing on a clean slate. The plaintiffs’ constitutional argument here is not “new.” Precisely the same view failed to garner a majority in Ott, despite being ably advanced in the dissent. AlliedSignal, Inc. v. Ott, 785 N.E.2d 1068, 1083 (Ind.2003) (“There are no inherent characteristics that distinguish workers with asbestos-related diseases caused by *1169 exposure to raw asbestos from those with the same diseases brought about by exposure to manufactured products containing asbestos. Thus the unequal treatment accorded to each class cannot be reasonably related to any inherent differences.”) (Dickson, J., dissenting). Thirteen years is hardly an eon in the realm of constitutional law, but it is long enough to generate reliance. Moreover, the General Assembly could have abrogated Ott with the stroke of a pen amending the statute, but rather left it intact — signifying the legislature’s “acquiescence and agreement with the judicial interpretation.” See Fraley v. Minger, 829 N.E.2d 476, 492 (Ind.2005). Despite my own ambivalence about Ott, I cannot say it is so clearly wrong or unjust to warrant upending an issue we have already settled — when nothing has changed since 2003 but a third vote for the opposing view.
In an era of increasingly polarized and hostile public discourse, I pause to say what would have gone without saying a generation ago. Today’s decision does nothing to change my deep respect for my colleagues, or my unwavering confidence in this Court as an institution. Reasonable people can (and today, do) disagree about each of the issues in this case, including the force of stare decisis. Still, I fear the Court’s change of heart sets into motion a pendulum that will swing long into the future — not because I expect we will actually reverse other close or controversial decisions, but because that is the inevitable perception.
As the Chief Justice and this Court’s newest member, I am particularly conscious of our changing composition, both in the recent past and in the near future. And in turn, I am particularly aware of what our actions imply when our narrowly divided Court reverses itself on an issue that, barely a decade ago, narrowly divided us in the opposite direction.
Judicial authority is a fragile thing. The executive branch has the power of police; the General Assembly has the power of the purse strings; but our Court has only the power of persuasion. Our efficacy therefore depends wholly on the rule of law-which is just another name for the respect we earn by showing stability and consistency in our judgments and integrity in our processes. Today’s reversal is not a catastrophe. But instead of building a little bit on the rule of law, this decision chips a little bit away.
I therefore respectfully dissent.